IN THE UNITED STATES COURT OF APPEALS,

FOR THE SIXTH CIRCUIT.

UNITED STATES OF AMERICA,                    APPEAL NO. 22-3603

APPELLEE,

Vs.

RUSSELL DAVIS,

APPELLANT.

---

## APPLICATION FOR REHEARING AND REHEARING EN BANC

---

Mr. William B. Norman, Esq.
Law Offices of Mr. William B. Norman
115 Lincoln Avenue
Berea, Ohio 44017

Attorney for Appellant, Mr. Russell Davis.


Mr. Matthew B. Kall, Esq.
Assistant United States Attorney, Office of the United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44115

Attorney for Appellee, United States of America.

**JURISDICTION**

This Honorable Court retains original jurisdiction over this cause under Title 28 U.S.C. § 1291. *See also*, Federal Rules of Appellate Procedure 35 and 40.

The panel decision directly conflicts with *United States v. Frazier,* 423 F.3d 526 (6th Cir. 2005), with regards to the requirement that, for the government to avoid the exclusionary rule in a suppression case with a bare-bones affidavit, the record must reflect that additional information known by an officer was actually communicated to the issuing judge and independently considered in determining whether to issue a warrant. On the first appeal in this case, the panel held that the affidavit adduced in support of a warrant lacked probable cause to connect Appellant's home to criminal activity. *See United States v. Davis*, 970 F.3d 650, 666 (6th Cir. 2020) (hereinafter *Davis* I).

On motion of the government, the panel remanded the case to allow the government the requested opportunity to supplement the record with information and facts the detective seeking the warrant relayed to the sitting magistrate. *Id.* On remand, a hearing was held and the magistrate testified to not recalling the proceeding which resulted in the warrant, and the detective testified that, although he could not remember any exact fact or set

of facts relayed, he "believes" he discussed the majority of the case, off-the-record with the magistrate, and that, during those conversations, he communicated information to the magistrate which connected the home to criminal activity.

The district court rejected this testimony on remand on the ground that it provided insufficient proof of the specific facts relayed which served to cure the probable cause deficiency. *United States v. Davis*, 1:16-cr-00260-CAB. Doc #: 152 Filed: 06/28/22, page 13 of 20 (hereinafter *Davis* II). The district court nevertheless denied suppression, reasoning that "despite the lack of probable cause," Detective Sivert and his fellow officers executed and "relied on the warrant in good faith" due to "Detective Sivert's 'belief' that he discussed this information with Magistrate Cook satisfies the 'modicum of evidence' necessary to connect Defendant, his drug dealing, and his phone to 1832 Garden Avenue." *Id.* Clarifying its holding, the district court stated that "[w]hile this 'belief' may not have been enough for probable cause, [] it satisfies the "less-demanding showing" necessary for good faith under *Leon*," supporting denial of the motion to suppress. *Ibid.*

The panel affirmed, reasoning additionally that Detective Sivert had uncovered overwhelming evidence tying Davis to the home," establishing a sufficient basis for probable cause, and "the magistrate (not the detective)

bore any blame for failing to transcribe the detective's additional oral testimony under state law," rendering precepts of good faith applicable and properly applied. *See United States v. Davis*, 6th Cir. No. 22-3603 (October 23, 2023) (hereinafter *Davis* III).

The ruling in this case conflicts with *Frazier*, *supra*, by allowing a deficient affidavit to be supplemented in a way directly confronted and rejected. Namely, presuming information known by the affiant to be communicated to the judge absent a record supporting that finding. As candidly recognized by the district court, the record does not establish that the information necessary to supplement the missing probable cause was orally revealed to the issuing magistrate. *See Davis* II, supra.[1] The panel affirmed reasoning that the information the affiant "believes" he relayed, although not confirmed by the magistrate, suffices to warrant application of the good-faith exception. *Davis* III.

---

[1] Even after remand, "[t]he Court is left with the evidence revealed at the hearing on remand and the witnesses' (understandably) hazy memories. Start with Magistrate Cook – he testified that he could not specifically recall issuing the warrant in this case. While it was his practice to talk about the investigation with affiants, he cannot recall doing so with Detective Sivert. For his part, Detective Sivert does remember talking about this case with Magistrate Cook.  That is because this investigation stood out to him – a retired officer's grandson dying of an overdose.  But as to the substance of the conversation, that remains unclear.  … On cross-examination, Detective Sivert reiterated he could not recall any specifics of the conversation and that he did not make a contemporaneous record. … . To approve this warrant and supplementation, the Court must find that Magistrate Cook had a 'substantial basis' to find probable cause to search a location.  But the unknown specifics here, even considering Detective Sivert's 'belief,' make it impossible to determine if that substantial basis – and the all-important nexus – were discussed here.  Because of this, the Court finds that the Affidavit, even after considering Detective Sivert's additional sworn testimony, did not provide a substantial basis to search the residence."

Because of this holding, it is no longer the law in the Sixth Circuit that affidavits may be supplemented with information "clearly known and considered by the magistrate" that would elevate the warrant to one with sufficient probable cause for a search. Rather, it is now the law that such affidavits may be supplemented if there is a possibility that such information was revealed to the magistrate. This is more than a semantic difference and goes to one of the key reasons why the *Frazier* decision ruled that the decision would not encourage bad behavior.

> "[W]e are unable to envision any scenario in which a rule excluding from the *Leon* analysis information known to the officer and revealed to the magistrate would deter police misconduct. Leon only comes into play when an officer has a warrant, albeit a defective one. Because a judge's initial probable cause determination is limited to the four corners of the affidavit, An officer has no incentive to exclude from the affidavit information that supports a finding of probable cause only to reveal this information to the magistrate by parol."

*U.S. v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005).

This panel decision creates the very incentive that *Frazier* was careful to avoid. Instead of facing questioning as to the specific information conveyed to the magistrate, this panel decision allows an officer to omit the specifics from the affidavit, and then state generally that he "discussed the case" with the magistrate, and it is as though he had communicated every single detail known to him at the time of the warrant application. That is an even better situation for the government, and even worse for the defendant,

and was precisely the type of advantage that *Frazier* warned of but could not imagine. The detective is decidedly better off if he leaves the information out of the affidavit and later testifies that he orally relayed missing information because he robs the defendant of the ability to challenge the application with specificity.

In *Frazier*, this circuit held that, to survive the exclusionary rule where an affidavit itself is bare-bones, the government must establish that the officer "actually communicated" additional information known to the officer at the time of application, rather than merely "believing" that he communicated the information.    This upends one of the primary justifications of the rule in *Frazier,* and clearly creates an advantage and incentive for law enforcement to omit information known to the requesting officer at the time of the application from the affidavit because it leaves Defendants without the ability to analyze and scrutinize the precise facts communicated to the issuing magistrate. The panel decision here seeks to create an impenetrable shield around the warrant process where the Defendant can never scrutinize the precise facts that are alleged to have supported the issuance of the search warrant in the first place. Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

The proceeding also involves one or more questions of exceptional importance:

Whether an officer's mere "belief" that he communicated additional facts to a magistrate to supplement an otherwise-defective affidavit in support of a search warrant is sufficient to save the search as against the exclusionary rule, or whether this Court will follow the current precedent that requires that the government establish that the officer actually communicated the additional facts.

## <u>LAW AND ARGUMENT</u>

## I.    <u>INTRODUCTION.</u>

Federal Rule of Appellate Procedure 35(B)(1)(a) allows for en banc consideration in the event that a decision produces law that deviates from previous decisions of this Circuit.  The majority opinion creates a conflict within this Circuit that must be addressed en banc.  Prior to the decision here (*United States v. Davis*, No. 22-3603, at *2 (6th Cir. Oct. 23, 2023), the law in the Sixth Circuit was that affidavits lacking probable cause may be supplemented with information curing deficiencies if that information was "***clearly*** known and considered by the magistrate." *United States v. Thomas*, 852 F. App'x. 189, 198 (6th Cir.2021) (emphasis added).  However,

following the majority's opinion here, the law is now that such information may be considered if the officer testifies to a mere "***belief***" that the information was known and considered by the magistrate.

Not only does the ruling here conflict with *Thomas*, supra, it also conflicts with clearly established law in the Sixth Circuit and in other contexts holding that beliefs that facts occurred are legally insufficient to establish that they occurred.

Consequently, for those reasons, rehearing and rehearing en banc of this decision is warranted.

## II.    PERTINENT FACTS ESTABLISHED BY THIS COURT AND ITS HOLDING.

This Court found the following:

1. "In Davis's first appeal, the government conceded, and this Court found, that the detective's affidavit in support of this warrant omitted facts showing the required probable-cause "nexus" between Davis and his home." *United States v. Davis* at *2.

2. When testifying about what oral supplementation Detective Sivert gave in support of the affidavit, the issuing magistrate "lacked a 'specific recollection' of Davis's case." *Id.* at *5.

3. When testifying about what oral supplementation he gave in support of the affidavit, Detective Sivert gave several different answers, which taken together clearly appear to mean that it would have been his procedure to have communicated other facts known to him at the time he applied for the warrant, but that he had no specific recollection of the discussion he had with magistrate Cook.

Detective Sivert gave several answers when asked about his sworn testimony to magistrate cook to supplement his bare-bones affidavit. In order of the transcript, they are as follows:

(Prosecutor direct examination)

> A. "We discussed the majority of the case. I can't sit here today and say specifically what we talked about, but it was general information about the case..."

Transcript at 2932.

Moments later the questioning continued.

> "Q. Do you recall telling Magistrate Cook at that time
>
> That information?
>
> "A. I believe I do. I can't be a hundred percent
>
> certain, but I am sure -- because we discussed a lot of
>
> the case, I am sure that was part of it.

*Id.* at 2933.

> "Q. So we have discussed what was going on at the time
>
> that you were meeting with Magistrate Cook. What
>
> conversations if you recall are you sure that you had
>
> with him or information that you gave Cook, Magistrate
>
> Cook, in relation to this securing of the search warrant?

A. Verbatim I couldn't tell you exactly what we talked
about, but the fact that the residence has been
identified if I remember correctly, identified as being
occupied by Russell Davis I recall. I believe the
vehicle information."

*Id.* at 2936.

After several attempts at leading the witness and a colorful
admonishment, the prosecutor again asks:

"Q. What else -- I am not going to lead you; just ask
the question. Tell the Court what it is you believe you
told Judge Cook.

A. I believe we talked about the vehicle and the
residence. Like I explained, I think we pretty much
discussed a lot about the case, as far as how we obtained
evidence and how we obtained information that led us to
this point.
*That's a standard thing I would do in any*
*search warrant, but specifically, verbatim I don't know*

if I could explain exactly what was said, but it was

mostly about the process of this case, how it went

through the investigation."

*Id.* At 2938 (emphasis added).


Next, the defense asked him about what he told the magistrate.

(Defense Counsel Cross-examination)

"Q. So, we are going off memory correct?

A. Correct.

Q. And you stated you don't remember exactly what you told him

A. Correct.

Q. You think you might have told him things going on in the case?

A. Correct.

Q. But, you can't be sure of any particular thing you told him, correct?

A. Correct."

This Court then went on to adopt the District Court's holding that "Sivert's general 'belief' that he had told the magistrate the facts that connected Davis to the home sufficed to prevent application of the exclusionary rule. *Id.* It is unclear from the majority opinion as to why the majority chose to characterize the above statements as Sivert testifying that

he was "sure" he shared known information with the magistrate when he testifies that he cannot be 100% certain, as the qualification immediately calls into question whether the witness is actually sure. *Davis II* at 6. It is equally unclear how the majority reconciled that characterization with the officer's admission that he can't be sure of any particular thing that he told the magistrate. What is clear from the majority opinion and the record is that neither the trial court, nor the majority could point to a single additional fact that Sivert established during his testimony on remand.

There is no record showing what the magistrate was actually told. There is no finding by the trial court or the majority opinion what facts the panel now says are established to change the quantum of evidence that was present on the first appeal. Did the panel credit the testimony so as to assume Sivert told every single fact known to him about the case at the time of the application for the warrant? If not, what specific facts does the majority credit? There is no way to know.

The law in the Sixth Circuit now is that what is known to the officer is irrelevant, and the only question is what was communicated to the magistrate at the time the warrant was issued. That is because the inquiry is not whether a reasonable officer would believe there was probable cause to issue the warrant, but rather whether a reasonable officer could conclude

that the magistrate properly issued the warrant. If a magistrate has no recollection that an affidavit is supplemented, if there is no written record of supplementation, and the detective cannot testify as to anything he said to the magistrate to supplement the affidavit, the officer does not qualify for the good faith exception under *Leon.*  This Court has already considered whether facts known to the officer could allow for *Leon* to apply, and has clearly said that the government must establish that the facts were actually communicated to the magistrate.

Rehearing en banc is necessary to correct this ruling that conflicts with otherwise established Sixth Circuit law.

## III.   THE MAJORITY HAS CHANGED SIXTH CIRCUIT LAW.

In *U.S. v. Frazier*, 423 F.3d 526, 535-6 (6th Cir. 2005), this Circuit held the following:

> "Accordingly, we hold that a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and ***revealed*** to the issuing magistrate."

(citations omitted, emphasis added)

As stated in Judge Gilman's dissent in this Case, this Circuit went on to require that the information must be "'clearly known and considered by the magistrate.'" *United States v. Thomas*, 852 Fed.Appx. at 198.

The ruling in this case conflicts with this holding by allowing a deficient affidavit to be supplemented in a different way. Here, it was not clearly established that the information necessary to show probable cause was orally revealed to the issuing magistrate. Rather, we only know that it *might have been*. Consequently, it is no longer the law in the Sixth Circuit that affidavits may be supplemented with information "clearly known and considered by the magistrate" that would elevate the warrant to one with sufficient probable cause for a search. Rather, it is now the law that such affidavits may be supplemented if there is a possibility that such information was revealed to the magistrate. This is more than a semantic difference, and goes to one of the key reasons why the *Frazier* decision ruled that the decision would not encourage bad behavior.

> "In fact, we are unable to envision any scenario in which a rule excluding from the Leon analysis information known to the officer and revealed to the magistrate would deter police misconduct. Leon only comes into play when an officer has a warrant, albeit a defective one. Because a judge's initial probable cause determination is limited to the four corners of the affidavit, *Hatcher*, 473 F.2d at 324. An officer has no incentive to exclude from the affidavit information that supports a finding of probable cause only to reveal this information to the magistrate by parol."

*U.S. v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005).

This panel decision creates the very incentive that *Frazier* was careful to avoid. Instead of facing questioning as to the specific information

conveyed to the magistrate, this panel decision allows an officer to omit the specifics from the affidavit, and then state generally that he "discussed the case" with the magistrate, and it is as though he had communicated every single detail known to him at the time of the warrant application. That is an even better situation for the government, and even worse for the defendant, and was precisely the type of advantage that *Frazer,* warned of, but could not imagine. The detective is decidedly better off if he leaves the information out of the affidavit and later testifies that he told the judge everything because he robs the defendant of the ability to challenge the application with specificity.

Additionally, the officer typically would have to swear under penalty of perjury that he said a particular thing to a magistrate, and if later he was found to have been wrong, he would be subject to prosecution, but this panel allows an officer to establish facts through his testimony, and later escape accountability if he was found not to have communicated as he testified, because he was only testifying as to his "belief" of what he told the magistrate. It is wrong and dangerous to allow officers to testify as to any fact that may help in the moment without any fear that they may later be held to account for any inaccuracies.

Consequently, because this ruling creates a conflict of law in this Circuit, rehearing en banc is warranted to maintain uniformity of the Sixth Circuit's decisions.

## IV.   IT IS WELL-SETTLED IN THE SIXTH CIRCUIT THAT A "GENERAL BELIEF" IS NOT LEGALLY SUFFICIENT TO ESTABLISH A FACT.

To adhere to Sixth Circuit law as established by *Frazier*, *supra*, this Court would be required to find that Detective Seibert's "general belief" that he conveyed the pertinent information to the magistrate is sufficient, as a matter of law, to establish a factual finding that it indeed was conveyed.  It is not.  While no case has directly addressed this point in the context of extra-affidavit statements conveyed to a magistrate issuing a warrant, it has been addressed in other areas of the law.

In the civil context, Sixth Circuit law is clear that a complaint must be dismissed if it is based on allegations that merely rise to the level of "information and belief."  *See 16630 Southfield Ltd. v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir. 2013) ("These [allegations made upon information and belief] are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned [and required dismissal of a civil complaint.").  It is well-established that the pleading standard in civil cases is very liberal. *See Smith v. City of Salem*, 378 F.3d. 566, 576 n.1 (6th

Cir.2004). If a mere belief is not legally sufficient to meet this liberal pleading standard in a civil case, it certainly should not be legally sufficient to abrogate Defendant's Constitutional Right to be free of searches and seizures absent a showing of probable cause. Consequently, en banc review of this Court's decision is warranted to avoid making this law.

Similarly, when determining whether facts can be considered in a summary judgment motion, they must rise to a level beyond "information and belief." *See Marcum v. Sevier Cnty.*, No. 3:13-CV-682-PLR-HBG, at *6 (E.D. Tenn. Apr. 27, 2015) ("Statements made on information and belief, however, are insufficient to create an issue of fact necessary to defeat summary judgment."). Again, when determining whether Defendant's privacy rights established by the 4th Amendment may be circumscribed, this Court should hold that such abrogation must be based on facts at least as certain as those allowing a civil litigant to have his case heard by a jury. The ruling by the majority states that while a belief that facts occurred, without more, is insufficient to even get to a jury trial in a civil case, it is sufficient to abrogate otherwise established 4th Amendment privacy rights. This ruling needs to be corrected.

## V.    CONCLUSION

The majority's opinion has changed the Sixth Circuit law espoused in *Thomas* that information may supplement a deficient affidavit if it is "clearly known and considered by the magistrate." *Thomas*, 852 Fed.Appx. at 198. Now, there only has to be a "general belief" that this information was conveyed to the magistrate.  This is a far lower standard, one which falls even short of the very liberal standard for establishing facts contained within the civil contexts described above.   Rehearing en banc is necessary to correct this.

Respectfully submitted,

*/s/ William B. Norman*
William Norman (0088113)
WEB NORMAN LAW, INC.
115 Lincoln Avenue
Berea, OH 44017
Phone: (216) 487-7055
Fax: (216) 815-1788
Email: WillNorman@DefendingCleveland.com
Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and complete copy of the foregoing

was electronically filed with the Office of the United States Attorney, 801

West Superior Avenue, Suite 400, this 6th day of November 2023.

Respectfully,

*/s/ William B. Norman*
William Norman (0088113
WEB NORMAN LAW, INC.
115 Lincoln Avenue
Berea, OH 44017
Phone: (216) 487-7055
Fax: (216) 815-1788
Email: WillNorman@DefendingCleveland.com
Counsel for Defendant

**Form 6.  Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with [the type-volume limit  of Fed. R. App. P. [_____]] [the word limit of Fed. R. App. P. [_____]] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) [and [_____]]:

     ☐  this document contains _____words, or

     ☐  this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

     ☐  this document has been prepared in a proportionally spaced typeface using

     _____ in

     _____, or

     ☐  this document has been prepared in a monospaced typeface using

     _____ with

     _____.

     /s/_____

     Attorney for _____

     Dated: _____

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  October 23, 2023

Mr. Matthew B. Kall
Office of the U.S. Attorney
801 W. Superior Avenue
Suite 400
Cleveland, OH 44113

Mr. William Bernard Norman
Norman Law, 115 Lincoln Avenue
Berea, OH 44017

Re:  Case No. 22-3603, *USA v. Russell Davis*
Originating Case No. : 1:16-cr-00260-1

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Sandy Opacich

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUSSELL DAVIS,

*Defendant-Appellant.*

No. 22-3603

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:16-cr-00260-1—Christopher A. Boyko, District Judge.

Decided and Filed:  October 23, 2023

Before:  GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  William Bernard Norman, W.E.B. NORMAN LAW, INC., Berea, Ohio, for Appellant.  Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

MURPHY, J., delivered the opinion of the court in which KETHLEDGE, J., joined. GILMAN, J. (pp. 15–19), delivered a separate dissenting opinion.

_____

## OPINION

_____

MURPHY, Circuit Judge. If a police officer violates the Fourth Amendment by conducting a search without probable cause, the "exclusionary rule" requires a court to prohibit the use of any recovered evidence at the defendant's criminal trial.  *See generally Mapp v. Ohio*, 367 U.S. 643 (1961).  In *United States v. Leon*, 468 U.S. 897 (1984), however, the Supreme

Court held the exclusionary rule typically will not apply if the officer obtained a warrant for this search—even if the judge who issued the warrant erred in finding that probable cause existed. *See id.* at 922. That said, *Leon* added that the officer cannot rely on the judge's probable-cause ruling to avoid the exclusionary rule if the affidavit requesting the warrant was so bare bones that no reasonable officer could believe that it established probable cause. *See id.* at 923. This case, which reaches us for a second time, raises a novel issue under *Leon*'s framework.

Russell Davis sold fentanyl that caused a deadly overdose. After a thorough investigation, a detective obtained a warrant from an Ohio magistrate to search Davis's home in Lorain, Ohio. In Davis's first appeal, the government conceded that the detective's affidavit in support of this warrant omitted facts showing the required probable-cause "nexus" between Davis and his home. *United States v. Davis*, 970 F.3d 650, 666 (6th Cir. 2020). But we remanded for an evidentiary hearing because the government contended that the detective had provided additional (unrecorded) oral testimony in front of the magistrate. *Id.* During this later federal hearing, the detective stated that he believed he had told the magistrate about the evidence connecting Davis to the home, but he could not recall any specifics. The district court held that this general belief sufficed to avoid the "bare-bones" label and thus to trigger *Leon*'s exception to the exclusionary rule.

We agree for two basic reasons. First, the detective had uncovered overwhelming evidence tying Davis to the home. And second, the magistrate (not the detective) bore any blame for failing to transcribe the detective's additional oral testimony under state law. We also reject Davis's other challenges to the warrant. So we now affirm Davis's conviction in full.

I

A

On the morning of March 7, 2016, Jacob Castro-White's mother tragically discovered that he had died from a drug overdose in their Lorain home. *Id.* at 654. A first responder alerted Detective Ernest Sivert of the Lorain Police Department. *Id.* At Davis's trial, Sivert detailed his ensuing investigation. *Id.* at 663. Sivert noticed that Castro-White's phone had many missed calls from Zaharias ("Harry") Karaplis. *Id.* During an initial interview, Karaplis implicated an

individual known as "Red" as the drug dealer who might have sold the fatal drugs to Castro-White.  *Id.*  But Karaplis also lied to Sivert by denying any involvement.  *Id.*

Sivert learned of this lie after receiving Castro-White's phone records.  *Id.*  Those records revealed Castro-White's activities on the evening of March 6.  *Id.* at 654–55.  Around 10:00 p.m., Castro-White began to text another friend, Corey Stock, about obtaining heroin.  *Id.*  Stock said that he could ask a drug-dealer acquaintance if she had heroin, but Castro-White declined the offer and said he would wait for Red.  *Id.* at 654.  Shortly before midnight, he texted Karaplis to see if Karaplis could arrange a drug deal with this person.  *Id.* at 654–55.

In a follow-up interview with Sivert, Karaplis continued to lie about his involvement.  Sivert confronted him with the texts.  *Id.* at 663.  Karaplis then requested a lawyer.  *Id.*  Before doing so, he identified the "Stock" in Castro-White's texts as Corey Stock.  *Id.*  Stock later told Sivert that he had bought drugs from "Red" at a "Garden Avenue home" in Lorain.  *Id.*

After retaining counsel, Karaplis spoke with Sivert a third time.  At last, Karaplis admitted his role.  *Id.*  He had arranged the heroin deal with Davis, and Castro-White had driven him to Davis's Garden Avenue house at 12:34 a.m. on March 7.  *Id.* at 655.  Karaplis paid Davis $50 for "what he thought was heroin," and Karaplis and Castro-White split the drugs.  *Id.*  It turns out that Davis had provided the men with fentanyl—a much stronger drug.  *Id.*  When speaking to Sivert this third time, Karaplis described Red and Red's car, provided Red's phone number, and located on Google Maps the specific home where he had bought drugs from Red.  *Id.* at 663.

Sivert traveled to this home and spotted a car parked nearby that fit Karaplis's description.  *Id.*  Sivert learned that the car's license plate was registered to "Russell Davis" and that Davis's nickname was "Big Red."  *Id.*  He also asked Karaplis to look at a photo array.  *Id.*  Karaplis identified Davis's picture as "Red" with "100 percent" confidence.  *Id.*

About a week later, Karaplis received a text message from Davis.  *Id.*  Karaplis contacted Sivert.  *Id.*  Sivert had Karaplis set up a phone call with Davis.  When Karaplis began to discuss Castro-White's death, Davis asked if the police had "sweat[ed]" him about it.  *Id.*

After this call, Sivert asked an Ohio magistrate for a warrant to search Davis's Garden Avenue home for his cellphone.  *Id.*  Sivert's affidavit summarized the events as follows:

1. In the early morning hours of . . . March 7, 2016, Jacob Castro-White was in contact with Zaharias Karaplis, another heroin user, for the purpose of obtaining heroin.

2. Zaharias Karaplis and Jacob Castro-White made contact with a male known as "Red" and later identified as Russell Davis, on his cellular phone (216) 526-8810 for the purpose of purchasing heroin, both through text and voice communication.

3. Zaharias Karaplis and Jacob Castro-White met with Russell "Red" Davis on March 7, 2016 for the purpose of buying heroin from him.

4. Jacob Castro-White ingested the purported heroin from Russell "Red" Davis and it caused him to overdose.  The time between the purchase of the heroin from Russell "Red" Davis and the estimated time of death, by the Lorain County Coroner Steven Evans is approximately one (1) hour.

5. Toxicology tests conducted by the Lorain County Coroner's Office revealed that Jacob Castro-White had a lethal dose of Fentynal in his sytem [sic].

6. On April 12, 2016 at 0945 hours Zaharias Karaplis received a text message from Russell "Red" Davis via his cellular telephone with the number (216) 526-8810.

*Id.* at 663–64.  "Based on this investigation," Sivert added, he believed that Davis had been "trafficking in heroin" from the Garden Avenue home and using his cellphone as an "instrument" of that "trafficking business."  Aff., R.31-1, PageID 121.  Sivert also opined that the phone was likely still at the Garden Avenue home, referring to it as the "residence of Davis."  *Id.*

The magistrate granted the search warrant.  *Davis*, 970 F.3d at 664.  During the search of Davis's home, police found, among other things, the phone and illegal drugs.  *Id.*

The government indicted Davis on two drug counts.  *Id.* at 654.  Davis moved to suppress the evidence recovered from his home.  *Id.* at 664.  The district court denied this motion.  *Id.*

Davis stood trial on one of the drug counts.  *Id.* at 654–55.  A jury convicted him of distributing fentanyl and found that the distribution caused Castro-White's death.  *Id.* at 655.  Given this fatality, the district court sentenced Davis to a mandatory life sentence.  *Id.*

In his first appeal, Davis sought to overturn his conviction on many grounds. We rejected all of his claims except for two concerning Davis's Fourth Amendment challenge to Sivert's affidavit. *Id.* at 656–66. Alleging that Sivert had omitted material facts from his affidavit, Davis argued that the district court should have held a hearing to examine the detective's truthfulness under *Franks v. Delaware*, 438 U.S. 154 (1978). *Davis*, 970 F.3d at 664. Alternatively, Davis argued that Sivert's affidavit did not assert any facts to show that Davis lived at the Garden Avenue home. In response to the second argument, the government conceded that the affidavit lacked the required probable-cause "nexus" between Davis and this home. *Id.* at 666. But it suggested that Sivert had given more oral testimony in front of the magistrate who issued the warrant. *Id.*

Ultimately, we remanded the case so the district court could hold an evidentiary hearing about what Sivert told the magistrate in person. *Id.* at 664, 666. We reasoned that the Fourth Amendment did not require written testimony. *Id.* at 666. We added that Sivert's investigation showed that he had plenty of facts connecting Davis to the Garden Avenue home. *Id.*

B

On remand, the district court held a hearing at which two witnesses testified: the magistrate who issued the warrant and Detective Sivert. Tr., R.147, PageID 2868. The magistrate explained that he followed a standard "process" when reviewing warrant requests. *Id.*, PageID 2880. He would "swear the officer," "review" the affidavit, and "discuss the issue with the officer[.]" *Id.* The magistrate did not use a court reporter to transcribe these conversations. *Id.* If an affidavit fell well short of probable cause but the officer knew more facts, the magistrate would ask the officer to draft another affidavit. *Id.*, PageID 2889–90. But the magistrate might not require a second affidavit if the first one fell "close" to the probable-cause line and the magistrate "needed clarification" on just one issue. *Id.*, PageID 2891. Although the magistrate described his general practice, he lacked a "specific recollection" of Davis's case. *Id.*, PageID 2882. But he would have been "shocked" if he had not spoken with Sivert about the warrant. *Id.*

Detective Sivert recalled more.  Davis's case "stuck in [his] mind" because he knew the victim's grandfather, a retired police officer.  *Id.*, PageID 2932.  Sivert "discussed the majority of the case" with the magistrate but could not remember any details that he had disclosed.  *Id.*, PageID 2933.  He stated that he was "sure" that he had conveyed the many facts connecting Davis to the Garden Avenue home, but he added that he could not "be a hundred percent certain[.]"  *Id.*

After this hearing, the district court again denied Davis's motion to suppress.  *See United States v. Davis*, 2022 WL 2314009, at *1 (N.D. Ohio June 28, 2022).  The court agreed that the affidavit failed to establish a probable-cause nexus between Davis and the Garden Avenue home.  *See id.* at *4.  It also found that the magistrate had put Sivert under oath to discuss the case.  *Id.* at *6.  But neither the magistrate nor Sivert could recall what Sivert had said.  *Id.* at *6–7.  Given the "unknown specifics," the court held that this testimony did not prove that Sivert conveyed facts to create probable cause that Davis lived at the home.  *Id.* at *7.

Even so, the court held that the exclusionary should not apply under *Leon* because Sivert had relied on the magistrate's issuance of the warrant.  *Id.* at *8–10.  It initially rejected Davis's claim that *Leon*'s exception to the exclusionary rule could not apply because the magistrate had "abandon[ed] his role as a judicial officer."  *Id.* at *9.  The court next rejected Davis's claim that *Leon*'s exception should not apply because Sivert's supporting affidavit was "bare bones."  *Id.* at *9–10.  It decided that Sivert's general "belief" that he had told the magistrate the facts that connected Davis to the home sufficed to avoid the bare-bones label.  *Id.* at *10.  The court lastly rejected Davis's claim that Sivert's affidavit presented materially false information.  *Id.* at *5.

Davis appeals a second time.  We review the district court's findings of historical fact for clear error and its legal conclusions de novo.  *United States v. Baker*, 976 F.3d 636, 641 (6th Cir. 2020).  And we treat the court's ultimate decision to apply *Leon*'s warrant exception to the exclusionary rule as a legal conclusion.  *United States v. Reed*, 993 F.3d 441, 446 (6th Cir. 2021).

II

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To establish the probable cause necessary for a warrant, an officer's supporting affidavit must show a "probable-cause 'nexus'" tying the place to be searched to the items to be seized. *Reed*, 993 F.3d at 447. Here, Detective Sivert sought to seize Davis's phone from the Garden Avenue home. But Sivert's affidavit mistakenly omitted facts showing that Davis lived there. So the government does not dispute that the affidavit failed to establish probable cause that the police would find the phone at this location.

This case instead concerns the proper response to this Fourth Amendment problem. The Fourth Amendment's text does not require any specific remedy when a magistrate issues a warrant lacking probable cause. *See Herring v. United States*, 555 U.S. 135, 139 (2009). But the Supreme Court has long adhered to a judge-made "exclusionary rule" that sometimes bars the use of evidence at a defendant's trial if the police uncovered it in violation of the amendment. *See Davis v. United States*, 564 U.S. 229, 236–38 (2011); *Arizona v. Evans*, 514 U.S. 1, 10–11 (1995). The Court now applies this rule only if its benefits in stopping constitutional violations exceed its costs in hindering the trial's "truth-finding function" and permitting "wrongdoers" to escape punishment. *United States v. Robinson*, 63 F.4th 530, 534 (6th Cir. 2023).

Engaging in this cost-benefit balance, the Court in *Leon* held that the exclusionary rule generally should not apply if a judge issues a search warrant that violates the Fourth Amendment because it rests on an affidavit that does not establish probable cause. 468 U.S. at 916–21. *Leon* reasoned that the exclusionary rule exists to deter the misconduct of police officers—not judges. *See id.* at 916. In most cases, moreover, the officer seeking a warrant will "defer to the judge's legal conclusion" about whether probable cause exists. *Reed*, 993 F.3d at 450. So the blame for a bad warrant generally will fall on the judge. *See Leon*, 468 U.S. at 920–21.

*Leon*'s rejection of the exclusionary rule would seem to govern Davis's case. After all, Sivert relied on the magistrate's conclusion that probable cause existed when he searched Davis's home based on the warrant that the magistrate had issued. And the magistrate (not Sivert) would have committed the primary "error" by overlooking that Sivert's affidavit failed to disclose facts showing that Davis lived at the home that Sivert sought to search. *Id.* at 921.

At the same time, *Leon* recognized that officers might sometimes bear the blame for unlawful warrants in "unusual" situations. *Id.* at 918. The Court identified "four" circumstances in which the exclusionary rule will still apply even if an officer obtains a warrant. *Baker*, 976 F.3d at 647 (citation omitted); *see Leon*, 468 U.S. at 923. Davis invokes three of these circumstances.

*Circumstance One: "Bare-Bones" Affidavits*. *Leon* held that the exclusionary rule should still apply even when an officer gets a warrant if the officer's supporting affidavit contained so little information that no reasonable officer could believe it established probable cause. 468 U.S. at 923. The classic example of this "bare-bones affidavit" alleges the officer's conclusory belief that probable cause exists without identifying any facts. *United States v. White*, 874 F.3d 490, 496, 498–99 (6th Cir. 2017). If, by contrast, an affidavit alleges "some modicum of evidence, however slight," connecting the sought-after items to the to-be-searched place, it will fall within *Leon*'s exception to the exclusionary rule. *Reed*, 993 F.3d at 451 (citation omitted).

Davis argues that Sivert drafted a bare-bones affidavit because it did not identify even a "modicum" of a connection between himself and his home. The government does not dispute Davis's claim that the affidavit *alone* was bare bones. So we need not consider that issue.

Rather, we must ask only whether Sivert's further testimony took this case outside the "bare-bones" camp. The district court could not identify any specific facts that Sivert told the magistrate because neither witness could recall the details years later. *See Davis*, 2022 WL 2314009, at *7. At best, Sivert stated a general "belief" that he told the magistrate about the information tying Davis to the residence. *Id.* at *10. The district court held that this belief provided the "modicum of evidence" required to trigger *Leon*'s exception. *Id.* We agree for two reasons.

*First*, Sivert uncovered plenty of evidence tying Davis to the Garden Avenue home. Stock told Sivert that he had bought drugs from "Red" at this home. *See Davis*, 970 F.3d at 663. Karaplis likewise identified the home on Google Maps as the place of the drug deal that led to the fatal overdose. *See id.* And Sivert corroborated their information. *See id.* When surveilling the home, he noticed the car that Karaplis identified as Red's and confirmed that the car belonged to Davis. *Id.* At the evidentiary hearing, Sivert added that he had run Davis's phone number through a police database, which also listed the Garden Avenue address as Davis's home. Tr., R.147, PageID 2946–47, 2960. If disclosed in Sivert's testimony, this evidence would have satisfied the Fourth Amendment by establishing probable cause that Davis lived at the home. *Davis*, 970 F.3d at 666.

In some courts, this evidence also would have triggered *Leon*'s exception to the exclusionary rule even if Sivert had not disclosed it to the magistrate. These courts hold that they may consider all of the circumstances (including facts "outside of the four corners of the affidavit") to evaluate whether an officer reasonably relied on a judge's finding that probable cause existed when issuing a warrant. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *United States v. McKenzie-Gude*, 671 F.3d 452, 459–60 (4th Cir. 2011); *United States v. Martin*, 297 F.3d 1308, 1318–19 (11th Cir. 2002); *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992); *see also State v. Dibble*, 150 N.E.3d 912, 916–17 (Ohio 2020); *Adams v. Commonwealth*, 657 S.E.2d 87, 93–94 (Va. 2008); *Moore v. Commonwealth*, 159 S.W.3d 325, 328 (Ky. 2005); *State v. Edmonson*, 598 N.W.2d 450, 460–61 (Neb. 1999); *Moya v. State*, 981 S.W.2d 521, 525–26 (Ark. 1998).

Admittedly, our court rejects this rule. When engaging in the *Leon* inquiry, we will not rely on information known only to the officer (and not the magistrate). *See United States v. Waide*, 60 F.4th 327, 342 (6th Cir. 2023); *United States v. Laughton*, 409 F.3d 744, 751–52 (6th Cir. 2005); *see also United States v. Knox*, 883 F.3d 1262, 1270–73 & n.7 (10th Cir. 2018); *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988). We instead will consider only the outside-the-affidavit information that an officer discloses to a magistrate by other means. *See United States v. Frazier*, 423 F.3d 526, 535–36 (6th Cir. 2005); *see also United States v.*

*Thomas*, 852 F. App'x 189, 198–99 (6th Cir. 2021).  Under our approach, then, Sivert's personal knowledge that Davis lived at the Garden Avenue home does not alone satisfy *Leon*.

Yet this approach brings us to our *second* reason why we will apply *Leon*'s warrant exception to the exclusionary rule: Sivert provided more facts to the magistrate.  And the magistrate bears the blame for failing to make a record of these facts.

To begin with, the district court found that the magistrate had put Sivert under oath and obtained more information about the case.  *See Davis*, 2022 WL 2314009, at *6.  Our caselaw permits us to consider this extra information.  *See Frazier*, 423 F.3d at 535–36.  Sivert later opined that he "believe[d]" he told the magistrate the facts connecting Davis to the residence.  Tr., R.147, PageID 2933.  And the district court concluded that his testimony did not satisfy the Fourth Amendment only because nobody transcribed it.  *See Davis*, 2022 WL 2314009, at *6–7.

Who is to blame for this oversight?  That question matters under *Leon*.  The Supreme Court has made clear that the exclusionary rule exists to deter only *police* misconduct.  *See Davis*, 564 U.S. at 246.  When an unlawful search arises from a *judge's* action, the Court has refused to exclude any evidence.  That occurred in *Leon* itself, which reasoned that a judge bears the blame for issuing a warrant without probable cause.  468 U.S. at 921.  The Court has since expanded this principle to other judicial errors.  It refused to apply the exclusionary rule when a court clerk wrongly failed to notify the police that an arrest warrant had been quashed.  *See Evans*, 514 U.S. at 4–5, 14–16.  And it refused to apply the exclusionary rule when a police officer relied on an appellate court's misreading of the Fourth Amendment.  *See Davis*, 564 U.S. at 241.

This principle applies here too.  The magistrate (not Detective Sivert) had a duty to record his testimony under Ohio law.  *See Dibble*, 150 N.E.3d at 921.  When considering warrant requests, Ohio judges "may require the affiant to appear personally . . . , and may examine under oath the affiant and any witnesses the affiant may produce."  Ohio Crim. R. 41(C)(2).  This Ohio rule adds: "Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit." *Id.*  The Ohio Supreme Court has held that any blame for failing to record this testimony belongs

to a judge.  *Dibble*, 150 N.E.3d at 921.  It reasoned that the "officer has no control over the court's recording and transcription procedures."  *Id.*  In this case, then, the "very fact" that the magistrate took more testimony would have led Sivert to reasonably "believe that the testimony [had] legal significance and [was] being properly considered in assessing probable cause."  *Id.*

In sum, even if Sivert's affidavit could be described as bare bones, the added information that he gave the magistrate suffices to avoid the exclusionary rule.  Sivert had substantial evidence connecting Davis to the Garden Avenue home.  He testified about his investigation. And we lack specific details about his testimony only because the magistrate failed to transcribe it.  Since Sivert did not engage in any intentional or reckless misconduct, the exclusionary rule should not apply to the evidence recovered from his search.  *See Herring*, 555 U.S. at 147–48.

In response, Davis argues that we may not consider Sivert's oral testimony because Ohio law allegedly prohibits courts from relying on unrecorded evidence at later suppression hearings. Ohio Crim. R. 41(C)(2).  His argument suffers from two problems.  For one thing, this Ohio rule regulates state courts and does not govern in these federal proceedings.  *See, e.g.*, *United States v. Beals*, 698 F.3d 248, 263–64 (6th Cir. 2012); *United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994).  And under our court's view of federal law, we may rely on information outside an affidavit where, as here, an officer conveys the information to the magistrate.  *See Frazier*, 423 F.3d at 535–36.  We have not limited this principle only to recorded information.  For another thing, the Ohio Supreme Court itself recently held that this Ohio rule does not bar the use of unrecorded testimony when evaluating a *Leon* defense in Ohio's own courts.  *See Dibble*, 150 N.E.3d at 920–21.  So it would make no sense for us to rely on the rule to reject the testimony in federal court.

*Circumstance Two: Officer Falsehoods*.  *Leon* also held that the exclusionary rule should apply despite a magistrate's issuance of a warrant if a police officer obtained the warrant by making a knowingly or recklessly false statement in the affidavit requesting it.  468 U.S. at 923. *Leon* cited the Court's earlier holding in *Franks* for this rule.  *Leon*, 468 U.S. at 923.  *Franks* held that a false statement in an affidavit can invalidate an ensuing warrant if the defendant proves two elements: that the officer knowingly or recklessly included the false statement and that the affidavit would not have established probable cause without it.  438 U.S. at 155–56.

Davis argues that this *Franks* rule should apply here because Sivert's affidavit did not tell the magistrate about Harry Karaplis's credibility issues, including his lies during their first two interviews. Davis thus does not rely on a *false statement* of fact in Sivert's affidavit. He relies on the *omission* of facts from the affidavit.

Although we have not categorically excluded these types of omissions from the *Franks* inquiry, we have repeatedly held that a defendant must meet a "higher" standard to invalidate a warrant based on an omission (rather than a false statement). *United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014) (quoting *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008)); *see, e.g.*, *United States v. Fisher*, 824 F. App'x 347, 353–54 (6th Cir. 2020); *United States v. Alford*, 717 F. App'x 567, 570 (6th Cir. 2017); *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). When describing this higher standard, we have sometimes noted that a defendant must prove that an officer omitted the information "with an intention to mislead" (not just with recklessness) and that the omission of the information was "critical to the finding of probable cause[.]" *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998); *see Hale v. Kart*, 396 F.3d 721, 726–27 (6th Cir. 2005). Other times, though, we have suggested that the defendant must show that the officer omitted the information intentionally or with reckless disregard. *See United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). If the latter rule applies, it is unclear how we have set a "higher" standard for omissions than the one that governs false statements (as we have said).

Regardless, Davis cannot meet any version of *Franks*'s first element. The district court found that Sivert had not intentionally misled the magistrate or acted in reckless disregard of the truth when failing to disclose Karaplis's credibility problems. *See Davis*, 2022 WL 2314009, at *5. We treat this conclusion as a finding of historical "fact" about Sivert's state of mind and so review it under the deferential clear-error standard. *See United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011); *United States v. Bonds*, 12 F.3d 540, 568–69 (6th Cir. 1993). Yet Davis does not point to any evidence to suggest—nor does he even argue—that Sivert intended to mislead the magistrate or acted in reckless disregard of the truth. Plenty of evidence shows the contrary. Sivert testified that he found Karaplis's statements credible despite his earlier lies. *See*

*Davis*, 2022 WL 2314009, at *5. Sivert also did much to corroborate the statements. *See id.* He reviewed Castro-White's phone records, interviewed Corey Stock, and surveilled Davis's house.

*Circumstance Three: Biased Magistrates*. *Leon* lastly held that the exclusionary rule should apply despite a magistrate's issuance of a warrant if the magistrate "wholly abandoned" a "judicial role" and failed to act as a neutral adjudicator. 468 U.S. at 923. *Leon* highlighted the decision in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979), as containing the prototypical facts that fit this exception. *See Leon*, 468 U.S. at 923. In *Lo-Ji*, a "Town Justice" issued a warrant to search a store for allegedly obscene films. 442 U.S. at 321–22. This judge then accompanied the police to the store and oversaw the search. *Id.* at 322–23. The Court held that the judge had not acted with the "neutrality and detachment" required of those who have the duty to issue warrants because he had joined in the executive branch's criminal investigation. *Id.* at 326–27.

Since *Leon*, we have interpreted this exception to apply if a magistrate acted as a mere "rubber stamp" for an officer by issuing the warrant without independently examining whether probable cause exists. *See United States v. Abdalla*, 972 F.3d 838, 847 (6th Cir. 2020); *United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010); *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993); *see also Leon*, 468 U.S. at 914. But prevailing on this theory takes more than a perfunctory allegation. Indeed, we have repeatedly rejected claims that magistrates abdicated their roles in this way. We, for example, held that a magistrate did not act as a "rubber stamp" just because he failed to catch that the warrant listed the wrong address in one section of the document. *See Abdalla*, 972 F.3d at 847–48. We also rejected such a claim when the magistrate edited an affidavit on the officer's behalf, noting that this attention to detail instead revealed that the magistrate had reviewed the warrant request "with a critical eye." *United States v. Warren*, 365 F. App'x 635, 637 (6th Cir. 2010) (quoting *Frazier*, 423 F.3d at 538).

Davis's claim here suffers from the same fate as the claims in these other cases. The magistrate neither participated in Sivert's investigation nor "rubber stamped" his affidavit. Indeed, the magistrate did not even rely solely on the affidavit. Rather, he put Sivert under oath and interrogated him about the investigation. As in our other cases, then, the record shows that

the magistrate reviewed Sivert's warrant request with healthy skepticism, not blanket trust. *See id.*

Davis counters that the magistrate violated Ohio Rule of Criminal Procedure 41 by failing to record Sivert's testimony. As the Ohio Supreme Court noted, however, this rule provides only that oral testimony will be admissible in later suppression hearings if a magistrate records it. *Dibble*, 150 N.E.3d at 920. The rule did not require such a recording.

Davis also makes much of the magistrate's opinion that Sivert had "unquestionable" credibility based on the 25 years that they have known each other. Tr., R.147, PageID 2902. Yet the magistrate still did not "rubber stamp" Sivert's affidavit despite the high regard in which he held the detective's character. And Davis cites no caselaw holding that a judge's favorable opinion of a witness's credibility alone renders the judge biased under *Leon*.

We affirm.

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge, dissenting.  Because the record is still devoid of what information was conveyed to the state-court magistrate at the time Detective Sivert applied for the search warrant in question, I am not persuaded that the testimony on remand saves the bare-bones affidavit.  I would therefore reverse the judgment of the district court and remand for the court to consider the government's alternative argument predicated on harmless error.

## I.  BARE-BONES ANALYSIS

In *United States v. Leon*, 468 U.S. 897, 920 (1984), the Supreme Court held that evidence obtained pursuant to an invalid search warrant need not be suppressed "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."  But an officer does not act in objective good faith if the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)).  Such an affidavit has been characterized as "bare bones."  *Id.* at 915, 926.

When assessing an officer's good-faith reliance on a search warrant, "[t]his court has been unequivocal in holding that . . . 'a determination of good faith reliance . . .  must be bound by the four corners of the affidavit.'"  *United States v. Waide*, 60 F.4th 327, 342 (6th Cir. 2023) (quoting *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005)).  But our court carved out a narrow exception to this rule in *United States v. Frazier*, 423 F.3d 526, 534–36 (6th Cir. 2005), for omitted information known to the affiant and revealed to the magistrate.

In *Frazier*, this court affirmed a district-court order denying the defendant's motion to suppress evidence that yielded marijuana and firearms.  *Id.* at 529.  The record in *Frazier* contained highly probative information concerning the defendant's participation in two prior drug transactions that was omitted from the affidavit.  *Id.* at 535.  Neither party disputed that the officers independently informed the magistrate that an informant had recorded the defendant's

participation in these two transactions.  *Id.*  The officers included this probative information in five related warrant affidavits presented contemporaneously to the magistrate.  *Id.*  This court held that "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and *revealed to the magistrate*."  *Id.* at 535–36 (emphasis added).

*Frazier*'s narrow exception was subsequently applied in *United States v. Thomas*, 852 F. App'x 189 (6th Cir. 2021).  In that case, a magistrate evaluated two related affidavits concerning a house and a barber shop.  *Id.* at 191.  The affidavit pertaining to the house contained highly probative information about the defendant's frequent meetings with a known drug dealer that was omitted from the barber-shop affidavit.  *Id.* at 197.  There was also evidence in the house affidavit that the drug dealer met with the defendant only when the dealer's drug supply was low.  *Id.* at 197–98.  Both warrants were issued the same day.  *Id.* at 198.  Because there was no question that the magistrate was presented with the key facts relevant to each warrant, there was no reason to believe that the magistrate did not recall and consider these key facts omitted from the barber-shop affidavit.  *Id.*  The omitted facts were therefore permitted to be considered under these circumstances.  *Thomas* ultimately interpreted *Frazier* as standing for the proposition that "the good-faith exception could apply where *information clearly known and considered by the magistrate*, but inadvertently excluded from an affidavit, supported a finding of probable cause."  *Id.* (emphasis added) (citation omitted).

In the present case, the government does not dispute that the affidavit at issue is bare bones.  *See* Majority Op. at 8.  Reliance on the affidavit alone would therefore be objectively unreasonable.  *See Leon*, 468 U.S. at 923.  To address this issue, we remanded this case with instructions for the district court to hold an evidentiary hearing.  *United States v. Davis*, 970 F.3d 650, 666 (6th Cir. 2020).  We reasoned that a remand was necessary because "[n]o evidence tells us whether [Detective] Sivert conveyed these facts [connecting Davis to the residence] under oath to the magistrate before the magistrate issued the warrant."  *Id.* (citing *United States v. Beals*, 698 F.3d 248, 268 (6th Cir. 2012)).

But even after the remand, we have no clue about what material information Detective Sivert conveyed to the magistrate, let alone information "clearly known and considered by the magistrate." *See Thomas*, 852 F. App'x at 198. The magistrate has no recollection at all of any additional facts that Detective Sivert discussed with him. And Detective Sivert has no more than a "belief" that he informed the magistrate about the facts tying Davis to the residence in question.

The majority, for its part, agrees that, "[a]t best, Sivert stated a general belief that he told the magistrate about information tying Davis to the residence." Majority Op. at 8. But the majority contends that Detective Sivert's general belief provided "a modicum of evidence" to trigger *Leon*'s good-faith exception. *Id.* This court, however, has never applied the modicum-of-evidence analysis to settle what the magistrate was clearly told. The modicum-of-evidence test is instead relevant only in analyzing *Leon*'s good-faith nexus between criminal activity and the places to be searched. *See, e.g.*, *Laughton*, 409 F.3d at 749 (observing that good faith may be found where review "turn[s] up some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched"); *United States v. Rose*, 714 F.3d 362, 368 (6th Cir. 2013) (holding that a modicum of evidence triggered the good-faith exception because "the . . . affidavit does . . . establish a link between criminal activity and [the defendant] . . . .").

Neither the majority nor the government has identified a case equating *Leon*'s good-faith nexus analysis with the quantum of proof necessary to clearly show that the magistrate knew of and considered facts omitted from an affidavit. The facts here are thus materially different from those in the cases of *Frazier*, 423 F.3d at 535, and *Thomas*, 852 F. App'x at 191, that are cited by the majority. Given that we lack what information Detective Sivert told the magistrate, I find no basis for the majority's conclusion that we may look beyond the affidavit under these circumstances. Absent additional evidence supplementing the affidavit, then, the bare-bones affidavit is insufficient to support a finding of good faith.

## II.  DETECTIVE SIVERT'S UNREASONABLE RELIANCE

The majority's second reason for applying *Leon*'s good-faith exception is because "the magistrate bears the blame for failing to make a record of these facts [provided by Detective Sivert]."  Majority Op. at 10.  To the contrary, good faith under *Leon* is a question of the officer's reasonableness, not the reasonableness of the issuing magistrate.  *Frazier*, 423 F.3d at 533 ("The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'") (quoting *Leon*, 468 U.S. at 922 n.23); *Thomas*, 852 F. App'x at 198 ("[G]ood-faith is ultimately a question of officer reasonableness in executing the warrant, not the reasonableness of the issuing magistrate.").

Consequently, irrespective of the magistrate's failure to transcribe Detective Sivert's oral testimony (whatever it was), the blame for relying on an undisputedly bare-bones affidavit falls on Detective Sivert.  And bare-bones affidavits do not fall within *Leon*'s good-faith exception to the exclusionary rule.  *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021).

## III.  HARMLESS ERROR

Alternatively, the government argues that affirming on the basis of harmless error would be appropriate because the government had already obtained phone records, text messages, and "compelling evidence" proving that Davis sold the heroin that caused Castro-White's death.  The district court did not reach the government's harmless-error argument because the court found that *Leon*'s good-faith exception applied.  *See United States v. Davis*, No. 1:16CR260, 2022 WL 2314009, at *10 (N.D. Ohio June 28, 2022).  I would remand this case so that the district can address in the first instance whether the government's error was harmless in light of the other evidence implicating Davis in Castro-White's death.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 436 (1975) ("[This] is a matter best decided, in the first instance, by the District Court.  That court will be free to take . . . new evidence . . . .").

**IV.  CONCLUSION**

In sum, because Detective Sivert's testimony on remand does not shed any light on why he relied on a bare-bones affidavit, I believe that the *Leon* good-faith exception does not apply. I would therefore reverse the judgment of the district court and remand this case for the court to consider the government's alternative argument predicated on harmless error.  Accordingly, I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-3603

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

RUSSELL DAVIS,

    Defendant - Appellant.

> **FILED**
> Oct 23, 2023
> DEBORAH S. HUNT, Clerk

Before:  GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk