IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 22-3603

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RUSSELL DAVIS,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Ohio

---

PLAINTIFF-APPELLEE'S OPPOSITION TO
DEFENDANT-APPELLANT'S PETITION FOR
REHEARING EN BANC

---

REBECCA C. LUTZKO
United States Attorney
Northern District of Ohio

/s/ Matthew B. Kall
Matthew B. Kall
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, OH  44113
(216) 622-3915
Matthew.B.Kall@usdoj.gov

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE.............................................................2

    I.     Thorough investigation proved that Davis distributed drugs that caused Jacob Castro-White's death......................................................2

    II.    Procedural History.................................................................5

           A.    Indictment, Suppression Motion, and First Appeal. ...................5

           B.    Following an evidentiary hearing, the district court found that officers executed the search warrant in good faith. ...................6

           C.    A panel affirmed the district court's decision............................7

ARGUMENT .....................................................................................8

    I.     *En banc* review is not appropriate in this case.....................................8

           A.    The panel opinion is consistent with Sixth Circuit precedent, and this is not an issue of exceptional importance. ...................8

           B.    Davis cannot demonstrate harm...............................................16

CONCLUSION .................................................................................19

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION.................20

# TABLE OF AUTHORITIES

**Federal Cases**

Herring v. United States, 555 U.S. 135 (2009)....................................... 9, 15

Illinois v. Gates, 462 U.S. 213 (1983) ................................................. 9, 15

Messerschmidt v. Millender, 565 U.S. 535 (2012)....................................10

Sparks v. United States, 90 F.2d 61 (6th Cir. 1937).................................12

Stone v. Powell, 428 U.S. 465 (1976) ........................................................9

United States v. Calandra, 414 U.S. 338 (1974)........................................9

United States v. Davis, 84 F.4th 672 (6th Cir. 2023) ..................................... passim

United States v. Davis, 970 F.3d 650 (6th Cir. 2020) ............................. 5, 12

United States v. Fowler, 535 F.3d 408 (6th Cir. 2008) ...........................11

United States v. Frazier, 423 F.3d 526 (6th Cir. 2005) .................................. passim

United States v. Garza, 10 F.3d 1241 (6th Cir. 1993) .............................14

United States v. Janis, 428 U.S. 433 (1976) ...........................................10

United States v. Leon, 468 U.S. 897 (1984)............................... 10, 13, 15

United States v. Patton, 962 F.3d 972 (7th Cir. 2020)............................12

United States v. Shields, 978 F.2d 943 (6th Cir. 1992).................... 11, 12

United States v. Tran, 433 F.3d 472 (6th Cir. 2006) ...............................12

United States v. Washington, 380 F.3d 236 (6th Cir. 2004) ...................10

**Federal Constitutional Provisions**

U.S. Const. Amend. IV .................................................................. passim

## **<u>Federal Rules</u>**

Fed. R. App. P. 35(a) ..................................................................8

Fed. R. Evid. 801(d)(2)(A) .........................................................18

## <u>INTRODUCTION</u>

During a month-long investigation, an eyewitness said Defendant-Appellant Russell Davis sold the drugs that killed Jacob Castro-White.  Before concluding the investigation, a detective sought a warrant to search Davis's home.  The supporting affidavit for the warrant was deficient.  But before the state magistrate issued it, he questioned the affiant under oath about the entire investigation.  Because the police reasonably acted in reliance on this warrant and the magistrate's procedures, the district court properly found that the good-faith exception applied.

The panel decision affirming this decision is entirely consistent with <u>United States v. Frazier</u>, 423 F.3d 526 (6th Cir. 2005), and other applicable Supreme Court and Sixth Circuit precedents.  Therefore, this Court should deny Davis's request for rehearing <u>en banc</u>.

Rehearing is unwarranted for a second, independent, reason.  Davis cannot demonstrate that any harm resulted from the search.  The evidence seized at Davis's residence was either cumulative or exculpatory.  In fact, evidence obtained in this search formed the cornerstone of Davis's trial defense.  Because Davis cannot demonstrate any harm, <u>en banc</u> review is unwarranted.

## STATEMENT OF THE CASE

### I.    Thorough investigation proved that Davis distributed drugs that caused Jacob Castro-White's death.

On March 7, 2016, Jacob Castro-White died in his bedroom from a drug overdose.  (R97: Trial Trans., PageID 688-89, 720-22, 788-89).  His mother, Cynthia, discovered the body and called the police.  (Id.).  Suspicious white powder and drug paraphernalia were nearby.  (Id., PageID 789-96).  Laboratory tests confirmed that Jacob died from a fentanyl overdose.  (Id., PageID 2293-95, 2405-06).

Detective-Sergeant Sivert investigated the death.  His first lead was Zaharis "Harry" Karapalis, who repeatedly called Jacob's cellphone the day Jacob died. (Id., PageID 799-803).  During a first interview, Karapalis suggested that Jacob had bought drugs from someone named "Red," but provided no additional details. (Id., PageID 803-07).

Sivert then obtained Jacob's recent text messages, which showed that Jacob and Karapalis had bought drugs together from "Red."  (Id., PageID 796-98, 808-09).  When reinterviewed, Karapalis admitted that they had bought drugs from "Red," specified the purchase location (Red's residence), and provided additional corroborating details.  (Id., PageID 810-24).

Sivert confirmed that Davis used the nickname "Red." (Id., PageID 825-28). Sivert also saw a car registered to Davis at the residence.  (Id.).  He also confirmed

that Davis lived at the address.  (R147: Suppression Trans., PageID 2946-47).

Karapalis viewed a photo array, identified Davis's picture, and said that he was

"100 percent" certain that Davis was "Red."  (R97: Trial Trans., PageID 828-32).

Karapalis also made a recorded telephone call to Davis.  (Id., PageID 833-38).

Davis asked Karapalis if someone was talking to police about Jacob's death.  (Id.).

Finally, as the final investigative step, Sivert sought a search warrant for

Davis's residence.  (R31-1: Affidavit and Warrant, PageID 119-22).  The affidavit

described that Karapalis and Jacob met with Davis and purchased heroin from him

approximately one hour before Jacob's fatal overdose.  (Id., PageID 121).  It

further stated that they had communicated with Davis on his cellphone.  (Id.).

It did not, however, provide specific details connecting Davis to the residence or

state that the drug sale occurred there.  (Id.).

Before the magistrate authorized the search warrant, he asked Sivert

numerous questions under oath.  (R147: Suppression Trans., PageID 2930-37).

The magistrate routinely followed this procedure: placing affiants under oath,

reviewing their affidavits, and asking any necessary follow-up questions.

(Id., PageID 2874-77, 2879-80, 2885).  By the time of the suppression hearing—

which occurred more than six years after authorizing the warrant—the magistrate

could not recall the specific questions he asked.  (Id., PageID 2880-81).  He also

did not have a court reporter with him when questioning Sivert, so there is no transcript. (Id.).

Sivert, however, recalled meeting with the magistrate. He had investigated numerous drug-overdose deaths, but this was memorable because he found the drug supplier. (Id., PageID 2932). He recalled discussing "the majority of the case" with the magistrate, including general information about the investigation, how it started, how they were able to conclude that Davis was the supplier, and why they needed the warrant. (Id., PageID 2933).

While Sivert could not recall his precise answers from six years earlier, he did recall telling the magistrate about Davis's ties to the residence—including observing Davis's car there—and information about Davis's recent use of the cellular telephone. (Id., PageID 2933-37). Sivert also described how he identified the search location with Karapalis's assistance, which was confirmed by public records and surveillance. (Id., PageID 2925-29, 2936-37, 2946-47). He stated that the magistrate asked him "a lot about the case, as far as how we obtained evidence and how we obtained information that led us to this point." (Id., PageID 2937). Thus, even though Sivert could not recall his statements verbatim from six years earlier, he did recall telling the magistrate about Davis's connection to the residence. (Id., PageID 2933-37).

4

When executing the warrant, officers seized Davis's telephone, approximately 7 grams of cocaine and 160 grams of marijuana.  (R104: Nimon Trans., PageID 1756-59; R107: Doyle Trans., PageID 2296-98).

## II.    Procedural History

### A.    Indictment, Suppression Motion, and First Appeal.

Davis was charged with distributing fentanyl resulting in death. (R1: Indictment, PageID 1-2).  Davis was also charged with possessing cocaine on April 13, 2016, with the intent to distribute.  (Id., PageID 2).

Davis filed a suppression motion and requested an evidentiary hearing, which the district court scheduled.  (R21: Motion, PageID 52-63; R23: Supplement, PageID 69-81; Docket Entry 2/13/2017, PageID N/A).  The government's response summarized the oral information that Sivert had provided the magistrate, anticipating the district court would hold a hearing.  (R31: Response, PageID 99-122).  The court, however, cancelled the hearing and denied suppression.  (R32: Order, PageID 123-31).

After Davis's conviction at trial,[1] this Court affirmed his convictions. United States v. Davis, 970 F.3d 650 (6th Cir. 2020), cert. denied, 141 S. Ct. 1108 (2021).  The government conceded that the district court should have conducted a

---

[1]    Before trial, Davis entered an unconditional guilty plea to possessing cocaine with the intent to distribute it.  (R95: Order, PageID 551).

suppression hearing, but it argued that the error was harmless.  This Court did not

consider the government's harmless-error argument; instead, it ordered a limited

remand for an evidentiary hearing on Davis's suppression motion.  <u>Id.</u> at 666.

### B.    Following an evidentiary hearing, the district court found that officers executed the search warrant in good faith.

After the district court conducted an evidentiary hearing, (R147:

Suppression Hrg. Trans., PageID 2863-968), it denied Davis's suppression motion.

(R152: Opinion, PageID 3037-56).  It found that the affidavit, when supplemented

with the oral testimony, "provided a minimally sufficient connection between

Defendant's drug dealing, his cellphone and his residence," and the police,

therefore, reasonably relied on the warrant.  (<u>Id.</u>, PageID 3054).

In reaching this conclusion, the court stated that Sivert's testimony—about

the extensive investigative steps that he took and his recollection of discussing

those steps with the magistrate—was credible.  (<u>Id.</u>, PageID 3054-55).  Although

the court could not conclude that the general information rose to the level of

probable cause—due to Sivert's inability, six years later, to recall specific answers

to the magistrate's questions—it nevertheless found that the good-faith exception

applied.  (<u>Id.</u>, PageID 3055).

The court emphasized that the failure to record the testimony was the

magistrate's fault, not Sivert's.  (<u>Id.</u>).  It held that punishing Sivert for the

magistrate's mistake would be unjustified.  (Id.).  "Detective-Sergeant Sivert testified that he discussed the entire case with Magistrate Cook.  From Detective-Sergeant Sivert's point of view then, he complied with everything the judicial officer required of him."  (Id.).  Since there was no evidence demonstrating that Sivert acted in bad faith, the court concluded that the good-faith exception applied. (Id., PageID 3055-56).

### C.    A panel affirmed the district court's decision.

This Court affirmed the district court's order.  United States v. Davis, 84 F.4th 672 (6th Cir. 2023).  Because the detective had gathered "overwhelming evidence tying Davis to the home," and the failure to preserve the oral testimony was the magistrate's fault, it held that the good-faith exception applied.  Id. at 675.

The panel cited the proper standard of review.  Id. at 678.  It also summarized the applicable Fourth Amendment precedents.  Id. at 678-79. It analyzed the four circumstances in which the exclusionary rule will still apply even if an officer obtains a warrant.  Id. at 679-80.  And it found that none of those circumstances existed, because Sivert's oral testimony was sufficient to avoid a "bare bones" characterization.  Id. at 680-81.

The panel considered and followed this Court's decision in United States v. Frazier, 423 F.3d at 535-36.  It stated, "under our court's view of federal law, we may rely on information outside an affidavit where, as here, an officer conveys the

7

information to the magistrate.  See Frazier, 423 F.3d at 535-36."  Davis, 84 F.4th at

681.  Because the magistrate questioned Sivert under oath before obtaining

additional information, considering that information was proper.  Id.  Because the

panel's decision was correct, and Davis has not satisfied the criteria for en banc

review, this Court should deny his petition.


### ARGUMENT

**I.**    ***En banc* review is not appropriate in this case.**

    **A.**    **The panel opinion is consistent with Sixth Circuit precedent, and this is not an issue of exceptional importance.**

Davis has not demonstrated that en banc review is warranted.  Under Federal

Rule of Appellate Procedure 35(a), en banc review is disfavored and will ordinarily

not be ordered, unless necessary to maintain uniformity or the question is

exceptionally important.

The question here is not exceptionally important.  The factual scenario is

unusual and rare.  And this Court's previous decisions have already described a

framework for analysis that the district court and panel followed.

Review is also not needed to maintain uniformity.  The panel's opinion is

consistent with this Court's precedents.  Davis's arguments to the contrary

misinterpret this Court's Frazier decision.  His arguments also combine two

"discrete" questions: whether there was a Fourth Amendment violation and

whether evidence should be excluded. The Supreme Court's and this Court's precedents show that these are separate questions, and the panel answered them correctly.

### 1. The panel properly applied the good-faith exception.

The Fourth Amendment does not mandate that evidence be excluded following a violation. Instead, Supreme Court decisions interpreting it established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." Herring v. United States, 555 U.S. 135, 139 (2009).

The exclusionary rule, however, does not always apply. Stone v. Powell, 428 U.S. 465, 486 (1976). Whether to exclude evidence is a separate question from whether a Fourth Amendment violation occurred. Illinois v. Gates, 462 U.S. 213, 223 (1983).

The Court created the exclusionary rule "to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 348 (1974). It is not applied in all cases because that could cause "disrespect for the law and administration of justice," particularly where the officers acted in objective good-faith reliance on a warrant. Powell, 428 U.S. at 491.

That is why the Supreme Court adopted the good-faith exception allowing the government to use "inherently trustworthy tangible evidence obtained in

reliance on a search warrant issued by a detached and neutral magistrate," even where the warrant was later deemed defective. United States v. Leon, 468 U.S. 897, 907 (1984). This exception encourages officers to seek warrants from neutral magistrates, whose scrutiny is a "reliable safeguard against improper searches." Leon, 468 U.S. at 913-14.

The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Normally, when officers obtain a warrant from courts, they have acted in good faith, and excluding the evidence would serve no deterrent purpose. Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (cleaned up). If suppressing evidence would not deter police misconduct, the exclusionary rule does not apply. Leon, 468 U.S. at 909, citing United States v. Janis, 428 U.S. 433, 454 (1976). Thus, where the issuing court erred, not the police, suppression is inappropriate.

The good-faith exception permits the government to introduce evidence seized in reliance on a warrant, except under four circumstances: (1) the affidavit contains information the affiant knew or should have known was false; (2) the magistrate abandoned their judicial role; (3) the warrant was facially deficient; or (4) the affidavit was barebones. United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004); see also Leon, 468 U.S. at 914-15. The panel properly interpreted

these factors.  Davis failed to show that any of these four circumstances was present.

First, the affidavit contained no false information.  Davis cited no alleged falsity, but instead, claimed that Sivert improperly excluded information regarding Karapalis's credibility.  But a higher standard applies to claims of deliberate omissions, United States v. Fowler, 535 F.3d 408, 415-16 (6th Cir. 2008), and the district court found that Sivert did not deliberately or intentionally mislead the magistrate.  See Davis, 84 F.4th at 682.  The panel deferred to the district court's finding, id., and Davis does not challenge that finding in this petition.

Second, the magistrate did not abandon his judicial role.  He did not participate in the investigation or rubber-stamp the warrant.  Instead, he reviewed the affidavit, placed Sivert under oath, and questioned him.  This demonstrated "healthy skepticism, not blanket trust," and therefore, the magistrate performed his role.  Id. at 683.  Thus, the second circumstance is not present.

Nor is the third.  Davis has never claimed that the warrant was facially deficient.

Fourth and finally, the information was not so barebones that Sivert acted unreasonably in relying on it.  Even if the affidavit itself was insufficient, Sivert orally supplemented it with additional sworn testimony.  That was permitted.  United States v. Shields, 978 F.2d 943, 947 (6th Cir. 1992).  And the district court

11

was permitted to consider this additional information when evaluating this fourth circumstance.  <u>Frazier</u>, 423 F.3d at 535-36.  Since this is the focus of Davis's petition, the government will address this in greater detail.

2.    <u>When analyzing the good-faith exception, information orally provided to the magistrate under oath may be considered.</u>

The Fourth Amendment does not require <u>any</u> written affidavit.  <u>Sparks v. United States</u>, 90 F.2d 61, 64 (6th Cir. 1937).  It also does not require that "oral testimony be transcribed or otherwise recorded.  Nor did the American legal tradition at the time of the Fourth Amendment's adoption."  <u>Davis</u>, 970 F.3d at 666 (cleaned up).  Thus, when seeking a search warrant, an officer may provide only oral testimony under oath, or may supplement an inadequate affidavit with sworn testimony.  <u>United States v. Tran</u>, 433 F.3d 472, 482 (6th Cir. 2006).

In his initial brief, Davis argued that the district court should have limited its analysis to the affidavit's four corners.  (Doc. 11: Davis Br., Page 37).  The panel properly rejected that contention.  <u>Davis</u>, 84 F.4th at 681.  For over 30 years, "courts have found it objectively reasonable for law enforcement officers to believe that a flaw in a warrant application could be cured by responding under oath to questions by the judicial officer."  <u>Shields</u>, 978 F.2d at 947.

After losing that argument, Davis now claims that the panel's decision conflicts with <u>Frazier</u>—a case that he failed to cite in his initial brief.  But the

12

panel's decision considered and followed <u>Frazier</u>.  <u>Davis</u>, 84 F.4th at 680, 681,

683.  <u>Frazier</u> held that a court reviewing an "officer's good faith under <u>Leon</u> may

look beyond the four corners of the warrant affidavit to information that was

known to the officer and revealed to the issuing magistrate."  423 F.3d at 535-36.

The information Sivert revealed to the magistrate was sufficient to

demonstrate that officers reasonably relied on the warrant.  Sivert shared "the

majority of the case" with the magistrate, including general information about the

case and how investigators identified Davis as the drug supplier.  (R147:

Suppression Trans., PageID 2933, 2937).  Even though Sivert did not recall his

answers verbatim, he did recall explaining Davis's ties to the residence—including

observing Davis's car there—and information about Davis's recent use of the

cellular telephone.  (<u>Id.</u>, PageID 2933-37).  Viewing the evidence in the light most

favorable to the government, this information was known to the affiant and

revealed to the magistrate.  Thus, consistent with the holding in <u>Frazier</u>, the panel

properly considered such evidence in its good-faith analysis.

Davis's arguments to the contrary are meritless and boil down to a fact-

bound disagreement with the panel's decision unworthy of <u>en banc</u> review.  The

panel's decision does not hold that "affidavits may be supplemented if there is a

possibility that such information was revealed to the magistrate," as Davis claims.

(Doc. 27: Petition, Page 5).  Sivert did not testify that there was a "possibility" that

he provided the information to the magistrate.  Through selective quotations from portions of testimony, Davis's petition construes the evidence in the light most favorable to him.  (Doc. 27, Pages 9-11).  But that is not the appropriate standard of review.  It is well-established that when the district court denies suppression, this Court reviews the evidence "in the light most favorable to the government." United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993).  Sivert testified that he discussed the majority of his investigation with the magistrate, including how he identified Davis as the drug source and connected Davis to the search location. (R147: Suppression Trans., PageID 2933-37).  Sivert did not say that it was merely "possible" that he provided such information.

The panel's decision does not encourage officers to omit information from affidavits.  As this Court stated in Frazier, "an officer has no incentive" to exclude relevant information from an affidavit, because doing so would make it "unlikely" to obtain a warrant.  423 F.3d at 525.

Davis's analogy to the standard for pleadings in civil cases or the summary judgment standard is unhelpful.  (Doc. 27: Petition, Page 16-17).  He cites no case where this Court has applied these civil procedure concepts to suppression issues. He asks this Court to evaluate "whether Defendant's privacy rights established by the 4th Amendment may be circumscribed."  (Id., Page 17).  But the relevant question is not whether the information Sivert provided was insufficient to

establish probable cause under the Fourth Amendment. Rather, this Court must

determine whether to apply the exclusionary rule. These two questions are

"discrete." Frazier, 423 F.3d at 535 (citing Gates, 462 U.S. at 223). Davis's

petition and arguments ignore this Court's and the Supreme Court's binding

precedents by combining the two questions.

Ordering suppression here would punish the government for the magistrate's

failure to have a court reporter present when he examined Sivert. When

determining whether to apply the exclusionary rule, the Supreme Court and this

Court have consistently examined who was at fault for the misconduct and

balanced the costs of excluding evidence against the value of deterring police

misconduct. Herring, 555 U.S. at 141-42. If excluding the evidence would not

result in appreciable deterrence of police misconduct, the exclusionary rule does

not apply. Leon, 468 U.S. at 909; Frazier, 423 F.3d at 533.

The district court and the panel concluded that suppressing the evidence

would not result in significant deterrence of police misconduct, but rather, would

punish the police for the magistrate's error. As the panel described it, "the

magistrate bears the blame for failing to make a record of these facts." Davis, 84

F.4th at 680. This was a reasonable conclusion, consistent with this Court's

decision in Frazier, and other Supreme Court cases interpreting the good-faith

exception. No error occurred, and therefore, rehearing en banc is unwarranted.

15

**B.    Davis cannot demonstrate harm.**

Even if Davis had demonstrated inconsistencies between the panel's holding and <u>Frazier</u>, <u>en banc</u> review still would be unwarranted, because Davis still would not be entitled to a new trial.  He cannot demonstrate any harm that resulted from the search.

Most of the evidence was obtained before the search.  Both Karapalis and another addict, Corey Stock, routinely assisted Jacob purchase drugs from Davis.  (R107: Stock Trans., PageID 2480-88).  Verizon Wireless had also provided Sivert with the last 72 hours of text messages from Jacob's telephones.  (R97: Sivert Trans., PageID 796-98, 808-09).  These messages corroborated that Jacob, Stock, and Karapalis regularly discussed buying heroin from Davis, also known as "Red."  (<u>Id.</u>).  Critically, those messages showed that Jacob declined Stock's offer to inquire whether anyone else had drugs available, stating that he would instead "just wait for the next time with red."  (<u>Id.</u>, PageID 810).  Location information corroborating that Jacob and Karapalis purchased drugs from Davis at his residence came from the cellphone companies, not from evidence seized under the search warrant.  (R104: Kunkle Trans., PageID 1673-86).

The evidence from Davis's residence did little to incriminate him on the death resulting count.  The government did not seize heroin or fentanyl there.  Instead, agents found marijuana and cocaine packaged for distribution, and an

electronic scale.  (R104: Nimon Trans., PageID 1756-60).  If anything, the absence of heroin and fentanyl at Davis's residence weakened the government's case, rather than strengthened it.

Evidence that Davis lived at the residence was cumulative.  Before the search, Karapalis and Stock both knew where Davis lived.  (R103: Karapalis Trans., PageID 1441; R107: Stock Trans., PageID 2477-78).  Sivert had also observed Davis's registered car there.  (R97: Sivert Trans., PageID 826-27).  Thus, the government had ample proof that Davis resided at this house, and papers corroborating that had little effect on the outcome.

Davis's cellular telephone, which officers found in the living room, offered some support for the government's case.  (Id., PageID 845).  But before seizing that phone, the government had already connected Davis to that telephone number through a controlled call from Karapalis to Davis.  (Id., PageID 833-35; R103: Karapalis Trans., PageID 1496-99).

The government's case against Davis rested largely on testimony from individuals, and text messages and phone records that the government had obtained from sources before—and independent of—searching Davis's residence.  Because the items seized from Davis's residence did little to incriminate Davis, their admission, if improper, was harmless.

Indeed, some evidence seized from the residence benefited Davis, rather

than harmed him.  Davis conceded at trial that he sold heroin.  (R106: Closing

Argument, PageID 2220-21).  His defense was that, although he occasionally sold

heroin, he was sleeping when Karapalis and Jacob called, and therefore, he did not

distribute the fatal drug dose.  (Id.).  The cornerstone of that defense was a text

message from Davis's telephone—which was obtained from the search.  (R96:

Defense Opening, PageID 610-11; R97: Sivert Cross, PageID 919; R103: Stock

Cross, PageID 1381; R105 Carty Cross, PageID 1912; R106: Defense Closing,

PageID 2218, 2247-48, 2257).  If the government had not seized the phone and

introduced the text messages on it, Davis could not have relied on it.  See Fed. R.

Evid. 801(d)(2)(A) (excluding statements of a party-opponent from the hearsay

definition).  That evidence was before the jury because the government introduced

all relevant text messages from Davis's telephone.  Simply put, evidence obtained

during the search was the foundation of his defense.  It did not harm him.

Davis has never explained how the evidence from his residence harmed him.

As the foregoing reflects, it did not.  The investigating officers obtained all critical

trial evidence demonstrating Davis's guilt before they searched Davis's residence.

Therefore, even if the search had been improper, any associated error would be

harmless.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this

Court deny Davis's petition for rehearing *en banc*.

                                         Respectfully submitted,

                                         REBECCA C. LUTZKO
                                         United States Attorney

By:    /s/ *Matthew B. Kall*
                          Matthew B. Kall
                          Assistant U.S. Attorney
                          801 West Superior Avenue, Suite 400
                          Cleveland, OH  44113
                          (216) 622-3915
                          Matthew.B.Kall@usdoj.gov

                          Counsel for Plaintiff-Appellee

## **<u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>**

I hereby certify that the foregoing contains <u>3,880</u> words according to the word-counting feature of Microsoft Word for Office 365 and complies with this Court's 3,900-word limitation for responses to *en banc* petitions.

<u>/s/ *Matthew B. Kall*</u>
Matthew B. Kall
Assistant U.S. Attorney
